COMMONWEALTH OF MASSACHUSETTS

WORCESTER, ss

SUPERIOR COURT DEPARTMENT
OF THE TRIAL COURT
CIVIL ACTION NO. 04-00524B

BOXCAR MEDIA, LLC, and )
RACEWAY MEDIA, LLC, )
    Plaintiffs, )
v. )
 )
REDNECKJUNK, LLC, )
DR. THOMAS P. CONNELLY and )
CONNELLY RACING, INC., )
    Defendants. )

## AFFIDAVIT OF OSMIN ALVAREZ

I, Osmin Alvarez, do hereby depose and state as follows:

1. I am the CEO of Raceway Media LLC ("Raceway") and Boxcar Media LLC ("Boxcar").

2. Raceway and Boxcar are both Massachusetts corporations located in North Adams, Massachusetts.

### THE PLAINTIFFS' TRADEMARKS

3. Raceway operates a well known business and web site known as "RacingJunk" and/or "RacingJunk.com." The business connects buyers and sellers of racing related parts and supplies and it provides a communication forum for the racing community. RacingJunk.com has been in existence since 1999 and is well known throughout the automobile racing community, among participants and fans.

4. Raceway earns revenue through commissions on the advertisements which are posted on the site. These commissions are paid on the honor system; i.e., a suggested fee depending on the price for the item.

1

5. Boxcar operates related businesses and web sites known as "BoatingJunk" and/or "BoatingJunk.com" and "RvJunk" and/or "RvJunk.com." These businesses have been in existence since 2000 and provide the same services as racingjunk.com, except with respect to boating and recreational vehicle ("RV") supplies and equipment, respectively.

6. The "RacingJunk" and "RacingJunk.com" trademarks are promoted through the web site as well as through other promotional activities.

7. For example, the trademarks are advertised and marketed through promotional items available for purchase on the web site, provided as gifts to advertisers and worn by Raceway personnel at racing events. These items include decals, hats and shirts which prominently display the "RacingJunk.com" trademarks. Photographs of the hats and shirts, including one being worn at a race, are attached as Exhibit A.

8. The "BoatingJunk.com" and "RvJunk.com" trademarks are likewise promoted through those web sites as well as through the RacingJunk.com web site.

9. The trademarks are also promoted through sponsorship of cars in automobile races. For example, on March 6, 2004, racingjunk.com sponsored an automobile driven by Carl Long in a race known as the UAW-Daimler Chrysler 400. The race was sanctioned by NASCAR as part of its NEXTEL Cup series and broadcast nationally on the Fox Television Network. The advertisement was very prominent. Copies of a photograph depicting the race car sponsored by RacingJunk.com is attached hereto as Exhibit B. RacingJunk.com is likely to continue to sponsor cars in upcoming races.

10. The trademarks "RacingJunk" and "RacingJunk.com" and the related trademarks "BoatingJunk.com" and "RvJunk.com" are extremely well known to consumers within the auto racing, boating and rv communities and markets and are extremely valuable assets of plaintiffs.

## THE DEFENDANTS' ACTIVITIES

### Defendants' Efforts to Become Involved in Plaintiffs' Business.

11.  On or about January 16, 2004, Dr. Thomas P. Connelly contacted Boxcar Media about a potential business relationship between Connelly and/or Connelly Racing, Inc. and Boxcar Media. That potential business relationship specifically focused on the Raceway and Boxcar trademarks.

12.  For example, Connelly inquired about investing in Boxcar or about "creat[ing] an equitable opportunity for RacingJunk, BoatingJunk or RvJunk" by permitting these entities to advertise on racing cars or uniforms. See email from Connelly dated January 16, 2004 and proposal from Connelly Racing to Boxcar Media dated January 17, 2004 attached as Exhibit C.

13.  The parties were unable to agree to the terms of a business relationship and, on or about January 27, 2004, Boxcar Media provided written confirmation to Dr. Connelly that it was not interested in a deal on the terms proposed. See email from Boxcar to Connelly dated January 27, 2004 attached as Exhibit D.

### Defendants' Selection and Use of An Infringing Trade Name and Resulting Confusion.

14.  On or about January 26, 2004, Dr. Connelly and Connelly Racing, apparently acting through an entity called RedneckJunk, LLC, registered the domain name "RedneckJunk.com." See Network Solutions Registration Record attached as Exhibit E. On or about March 8, 2004, the defendants launched a business at the web site www.Redneckjunk.com. However, the defendants began marketing www.Redneckjunk.com prior to March 8, 2004 by seeking sponsorship deals such as the one described below in ¶ 17.

15. The business at the web site "RedneckJunk.com" offers the same services as the RacingJunk.com, BoatingJunk.com and RvJunk.com businesses and web sites, that is, it purports to connect buyers and sellers of racing, boating and RV parts and supplies.

**Actual and Likely Continued Confusion.**

16. There is no conceivable reason that I can think of to select a business name ending with "junk" for identical services to ours except to try to trade on our name and reputation.

17. On Sunday, March 6, 2004, in the nationally televised automobile race known as the UAW-Daimler Chrysler 400 where RacingJunk.com had sponsored a car driven by Carl Long, RedneckJunk.com ran a prominent advertisement on a participating race car driven by Derrike Cope. Photographs of the RedneckJunk.com sponsored car are attached as Exhibit F.

18. At the race, race participants inquired of Raceway representatives whether RacingJunk.com and RedneckJunk.com were related in some way.

19. After the race, plaintiffs received consumer inquiry about its purported sponsorship of the Derrike Cope car (the car sponsored by RedneckJunk.com). See email dated March 8, 2004 attached as Exhibit G.

20. After the race, even third-parties commented on the similarity between the names "RacingJunk.com" and "RedneckJunk.com" as well as their related businesses. See article attached hereto as Exhibit H.

21. Even apart from the consumer confusion, this type of association is very damaging to RacingJunk because the term "redneck" is a very derogatory term on the racing circuit.

22. Indeed, NASCAR refused to permit RedneckJunk.com to sponsor a car at an Atlanta Motor Speedway race on March 13, 2004 because, according to a NASCAR spokesman,

"[w]e just didn't feel like that projected the proper image of our sport." See March 14, 2004 article from St. Petersburg Times Online attached as Exhibit I.

23. After the NASCAR decision to disallow "redneckjunk.com" from being displayed on Mr. Cope's car, plaintiffs received an email from a customer who was confused and believed that Racingjunk.com sponsored Mr. Cope's car. See email dated March 15, 2004 attached as Exhibit J.

24. In response to the NASCAR decision, Redneckjunk.com claims to have changed its business name to "rjunk.com" and it has registered the domain name rjunk.com as of March 15, 2004. See Network Solutions Registration Record attached as Exhibit K. However, the web site is still located at www.redneckjunk.com and it contains numerous references to RedneckJunk.com including promotional materials such as shirts and hats featuring the phrase "redneckjunk.com." See Exhibit L. In any event, "rjunk" is also likely to be confused with our trademarks – it looks like a shortened version of the "RacingJunk.com" trademarks.

25. Attached hereto as Exhibit M is a page from "JAYSKI'S SILLY SEASON SITE", one of the most popular unofficial NASCAR-related websites. (I believe they receive over 6 million page views a month). Apart from the fact that the site proponent felt it necessary to state that RedneckJunk.com has "nothing to do with RacingJunk.com," it is critical to note that this site now lists "redneckjunk.com" as a "primary sponsor." Accordingly, it appears certain that defendants are proceeding with and expanding their use of the "RedneckJunk.com" and "RJunk.com" infringing names.

### Defendants' Appropriation of The Content of Plaintiffs' Web Sites.

26. The defendants not only took our trade name, they also copied substantial content from our web site to their own including primarily customer advertisements.

27. In creating and launching their RedneckJunk.com business and site, defendants copied, without permission of either Raceway or Boxcar or its advertisers, advertisements from RacingJunk.com (and BoatingJunk.com and RvJunk.com) onto their own site. The copyright on that advertising copy is owned by Raceway and Boxcar as noted on our web sites.

28. For example, attached hereto as Exhibit N is the link on defendants' web site www.redneckjunk.com for an advertisement called <u>AOL and Racingjunk.com Testing the System</u>. This advertisement was a <u>test</u> advertisement that Raceway had placed on its site.

29. Attached hereto as Exhibit O is another advertisement that defendants simply copied onto their site. Note that the advertisement number says 156699 posted Tuesday, <u>December 9, 2003</u>. RedneckJunk was not in existence on December 9, 2003.

30. Attached hereto as Exhibit P is yet a third advertisement that defendants simply copied onto their site. Note that the advertisement bears two advertisement numbers (202742 and 1557) and two "posted" dates (March 2, 2004 and March 6, 2004). Also attached as Exhibit Q is the advertisement as it originally appeared on our site. Note that the advertisement was posted on March 2, 2004 and bore the advertisement number 202742.

31. In fact, on or about March 8, 2004, nearly <u>all</u> of the advertisements from RacingJunk.com and a substantial number from "BoatingJunk.com" and "RvJunk.com" had been copied onto defendants' site. Examples of advertisements that were copied from "BoatingJunk.com" and "RvJunk.com" are attached hereto as Exhibit R.

32. We later contacted certain customers whose advertisements had apparently been copied to ascertain whether those customers had voluntarily placed their advertisements on the redneckjunk.com site. In response, we not only found out that these customers had not authorized placement of their advertisements on the redneckjunk.com site, but additionally that

the copying of their ads on redneckjunk.com resulted in actual confusion. See emails, dated March 15, 2004 and emails, dated March 16, 2004 attached hereto as Exhibit S.

33. Defendants also copied links to "BoatingJunk.com" and "RvJunk.com" onto its site.

34. After receiving the demand letter attached hereto as Exhibit T, defendants removed most of the copied advertisements from their site and claim to have "confirmed" permission for the remainder. See email from Jean Sifleet, attorney for defendants attached hereto as Exhibit U. I have no way of knowing if they have "confirmed" permission for the material they took from my site that remains on their site. However, even if they have, the fact remains that they first acquired the advertisements illegally.

**Likely Confusion and Irreparable Harm.**

35. As noted above, there has been significant actual consumer confusion about an association between "Redneckjunk.com" and "RacingJunk.com" and that confusion is likely to continue. This type of confusion and association is harmful to our customers who may be misled to the RedneckJunk.com site and harmful to our business.

36. "Rjunk.com" is also likely to be confused with plaintiffs' businesses. It sounds like a shortened version of our business. Indeed, there is no reason for defendants to use the word "junk" in the title of their competing business except to trade on my companies' brand recognition and reputation and good will.

37. Defendants' actions in copying the advertisements from our sites have also hurt my companies. Defendants have taken revenue that properly belonged to my companies, associated my companies with the derogatory term "redneck," and appropriated goodwill associated with our brand.

38.  The defendants' conduct has caused and likely will continue to cause consumer confusion and substantial and irreparable harm to my companies' reputation as well as economic harm.

Signed under the pains and penalties of perjury this 29th day of March, 2004.

_____
Osmin Alvarez

#1266187 v3 - cotterbm - r4zv03!.doc - 21073/2

## CERTIFICATE OF SERVICE

I, Amanda C. Basta, counsel for the plaintiffs, do hereby certify that on this day, March 30, 2004, I served a copy a copy of the foregoing Affidavit of Osmin Alvarez by First Class Mail and Federal Express to counsel for the defendants:

>Jean D. Sifleet, Esq.
>120 South Meadow Road
>Clinton, MA 01510
>Counsel for the Defendants

>*Amanda C. Basta*
>Amanda C. Basta

Dated: March 30, 2004

#1266187 v\3 - cotterbm - r4zv03!.doc - 21073/2