FILED
IN CLERK'S OFFICE

2004 APR 28  P 3: 39

U.S. DISTRICT COURT
DISTRICT OF MASS.

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

C.A. No. 04-40051-NMG

| | |
|---|---|
| BOXCAR MEDIA, LLC, and <br> RACEWAY MEDIA, LLC, <br><br> Plaintiffs, <br><br> v. <br><br> REDNECKJUNK, LLC, <br> DR. THOMAS P. CONNELLY, and <br> CONNELLY RACING, INC., <br><br> Defendants. | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |

## DEFENDANTS' OPPOSITION TO
## PLAINTIFFS' MOTION FOR A PRELIMINARY INJUNCTION

### OVERVIEW

The Defendants RedneckJunk, LLC, Dr. Thomas P. Connelly, and Connelly Racing, Inc., (hereinafter referred to as "RedneckJunk") will demonstrate that the Plaintiffs, Boxcar Media, LLC and Raceway Media, LLC, (hereinafter referred to as "Boxcar and Raceway") have no legally protected interest warranting the issuance of a preliminary injunction. RedneckJunk will demonstrate that it is a competitor of Boxcar and Raceway, and that RedneckJunk has engaged in no activity proscribed by law. RedneckJunk will demonstrate that Boxcar and Raceway are a small start-up classified advertising website that is seeking to fend off legitimate competition through this civil action.

Originally, RedneckJunk sought a financial relationship with Boxcar and Raceway. When its principal's offer to associate was declined, RedneckJunk was established as a direct competitor (see attached **"Exhibit A"** - Affidavit of Thomas P. Connelly dated April 6, 2004 which includes Exhibits 1 through 8). RedneckJunk's website actual appears as "RJUNK.COM" (see attached **"Exhibit B"** - RedneckJunk.com's Home Page).

## BOXCAR AND RACEWAY'S FACTUAL CLAIMS

Boxcar and Raceway claim to have "brands and trademarks" that are "extremely valuable assets". (p. 3 - Plaintiffs' Memorandum). Boxcar and Raceway have operated a website "RacingJunk.com" since 1999. (p 1. - Affidavit of Osmin Alvarez included in Plaintiffs' submissions). Despite having their valuable asset in use for five (5) years, Boxcar and Raceway never bothered to register "RacingJunk" or "RacingJunk.com" as a protected trademark. Boxcar and Raceway's inaction speaks volumes: if Boxcar and Raceway really thought they had a valuable or unique trademark, they would have registered it sometime during their five (5) years of conducting business.

Boxcar and Raceway also claim that their "trademarks" of "RacingJunk" and "RacingJunk.com" are "extremely well known to consumers within the auto racing, boating, and rv communities". (p 2. - Affidavit of Osmin Alvarez). It is evident that the Boxcar and Raceway's trademarks are not so well known that they are common knowledge to consumers. Boxcar and Raceway have not demonstrated by quantitative data that their trademarks are well known. Nowhere in Boxcar and Raceway's submissions is there data of gross receipts, number of customers, number of sales, or profits. All we have are conclusory statements by Osmin Alvarez that their trademarks are "extremely valuable". (p. 2 - Affidavit of Osmin Alvarez). Nowhere is there any factual data indicating that "RacingJunk.com" is a profitable venture whose profits have been reduced by "RedneckJunk.com"'s actions.

The Affidavit of Osmin Alvrez gives a few anecdotes of supposed confusion by customers. (p. 5 - Affidavit of Osmin Alvarez). These anecdotes do not meet the burden of establishing irreparable harm. Absent from Boxcar and Raceway's submissions are hard numbers that demonstrate actual harm to the business. Absent is data showing that the number of "hits" at the website have dropped, that classified advertising numbers are down, and that gross receipts are down.

Boxcar and Raceway point to anecdotal evidence to support their claim of irreparable harm due to confusion among consumers between "RacingJunk" and "RedneckJunk". But, because Boxcar and Raceway can muster only a few emails and conversations, one would infer there is actually little confusion. If Boxcar and Raceway's website has high traffic, these few claimed incidents of confusion would represent a tiny fraction of the whole of Boxcar and Raceway's activities.

This leads to a related point: internet website traffic can be easily monitored by the website owner with quantitative exactitude. There are a host of software programs that count the website "hits". Software called "statcounter" is available free at "statcounter.com" (see attached **"Exhibit C" - StatCounter Home Page**). This software and many like it offer detailed statistical analysis of website visitors. It would be surprising if Boxcar and Raceway did not have this type of software in use at present. RedneckJunk suspects that Boxcar and Raceway are not bringing forward any quantitative evidence because it does not support their contentions of irreparable harm. If Boxcar and Raceway could demonstrate a substantial decrease in website traffic immediately after RedneckJunk's website went online, there might be evidence of harm. There is no such evidence in the record. It's absence is telling. RedneckJunk requests this Honorable Court to defer action on this motion so that RedneckJunk can be given an opportunity through an accelerated discovery process to show that no irreparable harm exists. Document requests under *Rule 34* will bring this issue into focus quickly.

In order to prevail on its motion for a preliminary injunction, Boxcar and Raceway must demonstrate irreparable harm. Boxcar and Raceway must also demonstrate that the hardship to RedneckJunk by the issuance of a preliminary injunction is less than the hardship to Boxcar and Raceway if the preliminary injunction is withheld. *DeNovellis v. Shalala*, 135 F.3d 58, *62 (1998). Boxcar and Raceway want RedneckJunk to shut down or change its name. Absent a showing by facts that demonstrate actual irreparable harm, the balance of harms weighs against issuing a preliminary injunction.

In response to Boxcar and Raceway's claims of consumer confusion contained in their counsel's letter (see attached **"Exhibit 4"** - letter of Attorney Brenda Cotter dated March 10, 2004 to Dr. Thomas Connelly), RedneckJunk through its counsel offered to post at RedneckJunk's website a disclaimer (see attached **"Exhibit 6"** - Email of Attorney Sifleet to Attorney Cotter dated April 4, 2004). The offer by RedneckJunk was based on the posting at "goggle.com". "Google.com" is the well known internet search engine. "goggle.com" is a website with a name spelled almost identically to "Google". "goggle.com" prominently posts this message: "This site is not associated with Google.com. If you intended to reach Google.com, click here". RedneckJunk in this action offered to make an identical posting on "RedneckJunk.com". The offer was rejected (see attached **"Exhibit 7"** - Email of Attorney Cotter to Attorney Sifleet dated April 5, 2004).

Boxcar and Raceway claim that they are irreparably damaged by the continuing confusion between allegedly similar names. But, Boxcar and Raceway have declined an offer that would eliminate the claimed confusion. This leads one to believe that Boxcar and Raceway have motives other than eliminating confusion: Boxcar and Raceway want to eliminate a competitor. The Boston Athletic Association sought an injunction against broadcast of the Boston Marathon by WCVB-TV. In denying the injunction, the Court noted that WCVB-TV had offered to eliminate any claimed confusion about sponsorship by means of a broadcast disclaimer but that the Boston Athletic Association declined this invitation:

> "To the contrary, Channel 5 offered to 'broadcast whatever disclaimers' the BAA might want...every thirty seconds, every two minutes, every ten minutes...to make certain no one thought the channel had any special broadcasting status". *WCVB-TV v. Boston Athletic Association*, 926 F.2d 42, *45 (1991).

Just like WCVB-TV, RedneckJunk has offered to post continuously a disclaimer at the very head of its website home page that makes it clear that RedneckJunk is not associated with Boxcar and Raceway. RedneckJunk is agreeable to posting any reasonable disclaimer in a large font prominently displayed. It is evident that motives other than consumer confusion are fueling this litigation.

## LANHAM ACT

The *Lanham Act* was enacted to protect legitimate producers from those who would profit from the legitimate producer's work by passing off/palming off their wares as the legitimate producer's wares. *Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763 (1992). But, the *Lanham Act* was not meant to be used as a sword by one competitor against another to hack down legitimate competition. Boxcar and Raceway point out that RedneckJunk copied factual information of advertiser's listings at "RacingJunk.com" and posted that factual information at RedneckJunk's website "RedneckJunk.com". Boxcar and Raceway claim this is an illegal act by RedneckJunk in violation of the *Lanham Act*. Boxcar and Raceway are wrong in this contention. Boxcar and Raceway have failed to acknowledge the recent Supreme Court cases signaling a retreat in the boundaries of protected interests. *Recent Developments In Trademark Law: The Ongoing Refinement of Rights*, Chad Doellinger (2004).

In *Dastar Corp. v. Twentieth Century Fox Film*, 539 U.S. 23 (2003), the Supreme Court clearly announced that the *Lanham Act* does not prevent unaccredited copying of an uncopyrighted work. *Dastar* drew the lines of demarcation between copyright and trade dress. It also set the boundaries of protection. It clearly held that the *Lanham Act* allows for free copying unless the copy material is otherwise protected. *Id. p. 2045-2050.* The Supreme Court clarified this area by preventing the *Lanham Act* from giving rise to a host of bastardized causes of action. If one is concerned about copying, copyright law affords protection. If one has a unique functional idea, patent law provides protection. The *Lanham Act* cannot be used to extend trademark, copyright, or patent protection. The Court makes it clear that the *Lanham Act* should not apply to communicative products; that is the law of copyright. *Id. p. 2047.*

In *Dastar*, Twentieth Century Fox complained that Dastar copied large portions of a video documentary, repackaged it with other material, and marketed it. The Court found no violation as to material copied as it was in the public domain. Likewise, Boxcar and Raceway have put their writings in the public domain. And, the data that Boxcar and Raceway complain was misappropriated was factual data about advertisers, not creative works. If *Dastar* sets the limit of what can be permissibly copied, RedneckJunk is well within that boundary.

It is difficult to discern exactly what Boxcar and Raceway's argument actually is. Are they claiming "trade dress" protection? If they are, they have failed because they must show that their product has a distinctive nonfunctional feature which distinguishes its services from other merchants. Boxcar and Raceway must demonstrate that their product is inherently distinctive and has developed a secondary meaning in the public mind. *I.P. Lund Trading v. Kohler Co.*, 163 F.3d. 27, *39 (1998). Clear examples are Coca-Cola and Apple Computer. The protection is for those whose brand carries weight by the brand name alone. A clear example of *Lanham Act* violation is a merchant selling generic cola as the Coca-Cola brand. The seller would be wrongfully profiting from Coke's hard work to establish its brand. We have nothing of this sort in this case. RacingJunk.com has not achieved the level of renown so that it's name has a distinctive nonfunctional quality that enhances sales. Moreover, "RacingJunk" and "RedneckJunk" are not so close that one would confuse them. Their meaning and connotations are not the same. RedneckJunk's counsel did a trademark search that found over two hundred plus (200+) firms that had "junk" in their name [see attached **"Exhibit 8"** - Trademark Electronic Search System(Tess) dated April 5, 2004].

There are numerous other examples that reveal the weakness of Boxcar and Raceway's claims. "Office Max" and "Office Depot" are well known retail competitors whose trade names are very similar (see attached **"Exhibit D"** - Office Max's Home Page and see attached **"Exhibit E"** - Office Depot's Home Page). They compete head to head in the same market with websites having similar features. This is permitted competition, not a *Lanham Act* violation. RedneckJunk is similarly situated to Boxcar and Raceway as head to head competitors. If Boxcar and Raceway flourish, it should be through their efforts in a competitive market, not by enjoining a legitimate competitor.

Boxcar and Raceway claim that "RedneckJunk.com" is so close to "RacingJunk.com" that it infringes on their unregistered trademark. But, the analysis is flawed. The word "redneck" and the word "racing" are totally and obviously different in both meaning and connotation. If these two words are different in meaning, the only similarity is the word "junk". "Junk", Boxcar and Raceway claim, means refuse. But, in the vernacular, "junk" has taken on another meaning. It has become synonymous with miscellaneous items. The Squackle.com website has a section entitled "Other Junk". This is their miscellaneous items section (see attached **"Exhibit F"** - Squackle website "Other Junk" page). And to the average consumer, that is the meaning conveyed: "racingjunk" means "racing

stuff", "racing items", "racing objects". Likewise "redneckjunk" means in slang "redneck stuff", "redneck objects". And, a search by RedneckJunk's counsel has shown that 200+ firms use "junk" in their registered trademarks. Boxcar and Raceway claim this relies upon "junk". Boxcar and Raceway act as if they alone have appropriated the word "junk" and made it their own. They have not. [**See attached "Exhibit 8"** - Trademark Electronic Search System(Tess) dated April 5, 2004].

Boxcar and Raceway also point to "confusion" that resulted from a recent NASCAR race. In essence, Boxcar and Raceway's complaint is really carping resulting from their vaunted entry's failure to even finish the race. RedneckJunk is the upstart that had the audacity to have a podium finish with its last minute entry. Boxcar and Raceway are unhappy with losing to RedneckJunk in legitimate competition on the racetrack. They complained to NASCAR. Likewise, Boxcar and Raceway are upset by legitimate competition in the marketplace by what they view as an upstart: they have complained to the Court.

RedneckJunk and Boxcar and Raceway offer basically a simple service: classified internet advertisement for which they take a fee from the seller. Competition is unpleasant, bruising, and harsh. But, that is our economic system. Let the best prevail or maybe both can thrive. RedneckJunk has offered to post a conspicuous disclaimer. But Boxcar and Raceway do not want legitimate competition. They want the field to themselves.

In conclusion, Boxcar and Raceway's request for a preliminary injunction should be denied.

REDNECKJUNK, LLC,
DR. THOMAS P. CONNELLY, and
CONNELLY RACING, INC.,
By their Attorney,

*Robert F. Casey, Jr.*
Robert F. Casey, Jr.
BBO# 077700
233 Ayer Road, Suite 12
Harvard, MA 01451
(978) 772-2223

                                                                                            /s/ Jean D. Sifleet

                                                                                            Jean D. Sifleet
                                                                                           BBO# 461820
                                                                                           120 South Meadow Road
                                                                                           Clinton, MA 01510
                                                                                           (978) 368-6104

Dated: April 28, 2004

DOCS\CONNELLY\ANSWER.ACO

## CERTIFICATE OF SERVICE

I, Robert F. Casey, Jr., attorney for the defendants, do hereby certify that on this date I served a copy of the following documents by U.S. Postal First Class Mail, postage prepaid, as follows:

**Defendants' Opposition to
Plaintiffs' Motion for a Preliminary Injunction**

to:

Plaintiffs' counsel:

Attorney Brenda M. Cotter
Attorney Amanda C. Basta
BROWN RUDNICK BERLACK ISRAELS, LLP
One Financial Center
Boston, MA 02111


Sworn and subscribed to by me under the pains and penalties of perjury this 28th day of April, 2004.

*/s/ Robert F. Casey, Jr.*
Robert F. Casey, Jr.

DOCS\CONNELLY\CERT.SER